**McGuireWoods LLP**
Matthew C. Kane, Esq. (SBN 171829)
  E-Mail:  mkane@mcguirewoods.com
Sabrina A. Beldner, Esq. (SBN 221918)
  E-Mail:  sbeldner@mcguirewoods.com
Amy E. Beverlin, Esq. (SBN 284745)
  E-Mail:  abeverlin@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, California 90067
Telephone: (310) 315-8200
Facsimile: (310) 315-8210

Sylvia J. Kim, Esq. (SBN #258363)
  Email: skim@mcguirewoods.com
2 Embarcadero Center, Suite 1300
San Francisco, CA 94111
Telephone: 415.844.9944
Facsimile: 415.844.9922

Attorneys for Plaintiff
PERFORMANCE HEALTH SUPPLY, INC. d/b/a MEDCO SPORTS MEDICINE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFORMANCE HEALTH SUPPLY, INC. d/b/a MEDCO SPORTS MEDICINE, a Minnesota corporation,<br><br>Plaintiff,<br><br>vs.<br><br>RAY SCOTT HOWERTON, an individual; W.L. COLLINS CORPORATION d/b/a COLLINS SPORTS MEDICINE, a Massachusetts corporation; and DOES 1 through 50, inclusive<br><br>Defendants. | CASE NO. 5:18-CV-1066<br><br>**COMPLAINT FOR:**<br><br>**(1) MISAPPROPRIATION OF TRADE SECRETS, CAL. CIV. CODE § 3426, ET SEQ.**<br><br>**(2) MISAPPROPRIATION OF TRADE SECRETS, 18 U.S.C. § 1836, ET SEQ.**<br><br>**(3) VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030, ET SEQ.**<br><br>**(4) VIOLATION OF CALIFORNIA PENAL CODE § 502, ET SEQ.**<br><br>**(5) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>**(6) BREACH OF CONTRACT**<br><br>**(7) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**(8) UNFAIR COMPETITION, CAL. BUS. & PROF. CODE § 17200, ET SEQ.**<br><br>**(9) UNFAIR BUSINESS PRACTICES, MASS. GEN. LAWS ch. 93A, § 11**<br><br>**DEMAND FOR JURY TRIAL** |

102519784.7

**COMPLAINT**

Plaintiff PERFORMANCE HEALTH SUPPLY, INC. d/b/a MEDCO SPORTS MEDICINE ("Plaintiff"), a Minnesota corporation, hereby complains and alleges against Defendants RAY SCOTT HOWERTON ("Howerton"), an individual, W.L. COLLINS CORPORATION d/b/a COLLINS SPORTS MEDICINE, a Massachusetts corporation ("Collins"), and DOES 1 through 50, inclusive, as follows:

## INTRODUCTION

1.     Plaintiff is a global leader of medical device and equipment distribution for sports medicine, athletic training, and rehabilitation.  Since 1918, Plaintiff (including its predecessor companies) has distributed strength and conditioning, rehab and recovery, and pain relief products across the country, including to thousands of elementary, middle and high schools and universities.

2.     Defendant Howerton is a former employee of Plaintiff who, during his employment, worked as a Regional Sales Manager, responsible for Plaintiff's sales territories in California, Nevada, and Arizona.  In this role, Howerton directed and supervised the sales team and aided Plaintiff in developing strategies to maximize the sales area's growth and profitability by providing quality service to Plaintiff's customers.  He was also responsible for maintaining Plaintiff's customer relationships and consulting with athletic trainers, strength and conditioning coaches, and school nurses to secure product orders for Plaintiff and increase product usage by Plaintiff's customers.

3.     Defendant Collins is a Massachusetts corporation that is also engaged in the business of selling sports medicine, athletic, and strength and conditioning products to athletic trainers, physical therapists, and healthcare professionals.  Plaintiff is informed and believes and on that basis alleges that Howerton is currently employed by Collins as a Regional Sales Manager, responsible for Collins' sales efforts in California, Nevada, and Arizona.

4.     Howerton worked for Plaintiff from approximately May 2014 until on or about Sunday, April 22, 2018, when he abruptly resigned his employment without

2
**COMPLAINT**

notice at 12:58 a.m. PST "[d]ue to a recent job opportunity."  Plaintiff is informed and believes that Howerton had accepted a position with Collins in or around March 2018, but concealed that fact from Plaintiff, and resigned his employment with Plaintiff only after he had managed to copy significant amounts of Plaintiff's confidential and proprietary information, including, but not limited to, customer contact information and confidential pricing information, and intercept and divert numerous potential business opportunities from Plaintiff to Collins.

5.    Upon joining Plaintiff, Howerton was provided with a copy of Plaintiff's Employee Handbook and was made aware of and acknowledged the policies and procedures contained therein.  In relevant part, the Employee Handbook provides that "[t]he success of the Company depends upon the proper use and management of certain proprietary or confidential information" and that "[i]nformation of this type should not be discussed outside the Company, except when necessary in the performance of the employee's duties."  It further provides that "Company employees should not disclose any Company matters outside of the organization" and that "[u]nauthorized release of Company information may result in disciplinary action up to and including termination."  The Employee Handbook also prohibits employees from including "any trade secret or other confidential proprietary information of the Company" in social media or other online postings; notes that visitors, vendors, and outside salespeople are required to sign a nondisclosure/confidentiality agreement; and provides that "passwords or user ID's assigned by the Company are designed to protect the Company's confidential information from outside third parties" and that "[a]ll internet users will be held accountable for causing any … breaches of confidentiality."

6.    Also, in the course of his employment, in November 2017, Howerton executed a Unit Award Agreement (the "UA Agreement") with Plaintiff's parent company, Lanai Holdings I, LLC ("Lanai"), which approved a grant of Award Units to Howerton pursuant to the Lanai's 2015 Equity Incentive Plan, which expressly "is intended to advance the best interests of [Lanai] and its Subsidiaries."  In executing the

UA Agreement, Howerton acknowledged that, in the course of his employment, he received and would receive in the future certain confidential and proprietary information and trade secrets, including confidential information "regarding identifiable, specific and discrete business opportunities being pursued by the Company and its Subsidiaries." Pursuant to the UA Agreement, Howerton further agreed that he would not "prior to or after [his] Separation Date, whether directly or indirectly … take commercial or propriety advantage of or profit from any Confidential Information [as defined therein] or disclosure Confidential Information to any Person for any reason or purpose whatsoever," except to authorized employees of the Company or in the course of performing his obligations under the UA Agreement.

7.    Plaintiff is informed and believes and on that basis alleges that during his employment with Plaintiff, Howerton engaged in unlawful conduct including, but not limited to, improperly accessing, copying, and/or otherwise retaining Plaintiff's trade secrets/confidential and proprietary information and intentionally tampering and interfering with and deleting information maintained on Plaintiff's computer systems and/or network.  Plaintiff is informed and believes and on that basis alleges that, while Howerton was still employed by Plaintiff, he accepted an offer of employment from Collins with the express intent to use Plaintiff's trade secrets/confidential and proprietary information to compete with it unfairly and to induce long-standing customers of Plaintiff to cease doing business with Plaintiff and instead place product orders with Collins, including, but not limited to, diverting quotes for orders to be placed with Plaintiff to Collins while he was still employed with Plaintiff.

8.    Moreover, Plaintiff is informed and believes and on that basis alleges that Howerton has been engaging in this unlawful conduct with the knowledge, ratification, and participation of Collins, including, but not limited, to that company's President, Walter ("Wally") Collins.  Howerton, acting on his own and through the other Defendants, including Collins and the Doe defendants, engaged in these unlawful acts knowingly, willfully and intentionally, and with the specific intent to deceive and cause

harm to Plaintiff.  Plaintiff further asserts that such contentions are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## THE PARTIES

9.      Plaintiff is a Minnesota corporation with its principal place of business and corporate headquarters in Warrenville, Illinois.

10.     Plaintiff is informed and believes and on that basis alleges that Defendant Howerton is an individual and has at all times relevant to this action been a resident and citizen of the State of California and who is currently employed by Defendant Collins.

11.     Plaintiff is informed and believes and on that basis alleges that Defendant Collins is a Massachusetts corporation with its principal place of business and its corporate headquarters in Raynham, Massachusetts.  Plaintiff is informed and believes and on that basis alleges that Collins regularly conducts business operations in California, including, but not limited to, the sale of sports medicine, athletic training and strength and conditioning products to customers located in California, and that it directs, authorizes and/or ratifies its business operations conducted in California, including as alleged herein, from its principal place of business and/or corporate headquarters in Massachusetts.  With respect to the acts and conduct of Defendants Howerton and/or DOES 1 to 50 alleged herein, Plaintiff is informed and believes and on that basis alleges that they are each personally guilty of oppression, fraud or malice in engaging in such acts or conduct, that Defendant Collins had and has advance knowledge of their unfitness and employed and employs them with a conscious disregard of the rights of others (including without limitation Plaintiff), or authorized and ratified their wrongful conduct for which damages are sought, and that such advance knowledge and conscious disregard, authorization, and ratification was on the part of an officer, director, or managing agent of Defendant Collins, including without limitation its President, Wally Collins, and that such contentions are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

12.   Defendants DOES 1 to 50, inclusive, are sued herein under such fictitious names.  Plaintiff is informed and believes, and on that basis alleges, that Defendants, and each of them, including those designated herein as DOES 1 to 50, are responsible in some manner for the occurrences, happenings, acts and omissions alleged herein, that they were each an officer, director or managing agent of the other Defendants, and that Plaintiff's damages, injuries, and losses alleged herein were and are the direct proximate result of said occurrences, happenings, acts and omissions of said Defendants, which they committed being personally guilty of oppression, fraud or malice, and that such contentions are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

13.   Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants, including Howerton and those designated herein as DOES 1 to 50, were the alter egos, agents, partners, principals, officers, directors, managing agents, affiliates, conspirators, co-conspirators, joint venturers, employers, and/or employees of each of the remaining Defendants.  Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants, including those designated herein as DOES 1 to 50, were acting within the course, scope and authority of said relationship and with the knowledge, consent, approval or ratification of each of the remaining Defendants.

## JURISDICTION AND VENUE

14.   This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that Plaintiff's Second Claim for Relief under 18 U.S.C. § 1836, *et seq.*, and Third Claim for Relief under 18 U.S.C. § 1030, *et seq.*, arise under federal law.

15.   This Court has personal jurisdiction over Defendant Howerton because he is a citizen and resident of California, the claims asserted against him arise directly from his activities in the State of California both in his former role as an employee of Plaintiff and his current role as an employee of Collins.

16.   This Court has personal jurisdiction over Defendant Collins because it regularly and purposefully conducts business in and with citizens of California, and the

**COMPLAINT**

1   claims asserted against it in this action arise directly from its activities, and/or the

2   activities of its agents, representatives, employees, owners, members, officers,

3   directors, managing agents and/or alter egos, including but not limited to Howerton,

4   which were and/or are occurring in, directed to and/or impacting the State of California.

5       17.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because:

6   (1) all Defendants are subject to personal jurisdiction in this District at the time this

7   action is commenced; and (2) a substantial part of the events and/or omissions giving

8   rise to claims alleged herein occurred in Riverside County, California.

9   <u>**FACTS COMMON TO ALL CLAIMS**</u>

10      18.  Plaintiff is a global leader of medical device and equipment distribution

11  for sports medicine, athletic training, and rehabilitation.  Plaintiff is also the maker of

12  clinically-proven brands sold across the globe in a wide range of channels, including

13  retail, specialty retail, professional and e-commerce, which products are backed by

14  clinical research, empowering education, instruction and content, endorsement by

15  healthcare professionals, and practice-building support.  Plaintiff provides solutions and

16  products for health and wellness, exercise and performance, rehab and recovery, and

17  pain relief, and services consumers, athletes, patients, and healthcare practitioners.

18  Since 1918, Plaintiff (including its predecessor companies) has distributed strength and

19  conditioning, rehab and recovery, and pain relief products across the country, including

20  to thousands of elementary, middle and high schools and universities in California.

21      19.  Plaintiff, through the investment of significant time, effort and expense,

22  has developed and compiled through its business operations: (a) information about its

23  customers (including, *inter alia*, their schools, athletic trainers, and directors of sports

24  medicine) and their purchase histories and preferences, including customer-specific

25  pricing strategies and lists; (b) a method for and database identifying the best

26  prospective customers; (c) marketing and sales techniques that yield a higher than

27  average success rate; (d) business systems and future plans; (e) sales data and related

28  materials developed for in-house use; and (f) administrative and manufacturing

**COMPLAINT**

processes, all of which are trade secrets and/or confidential and proprietary information that is essential to Plaintiff's operations. Such trade secrets and/or confidential and proprietary information constitutes Plaintiff's main asset and is valuable to Plaintiff and its competitors because it derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from disclosure or use of the information.

20.    Plaintiff makes reasonable efforts to maintain the secrecy of its trade secrets and other confidential and proprietary information by: (1) promulgating and enforcing policies and procedures that regulate and restrict the access and use of such information by employees; (2) maintaining systems that monitor employee access and use of such information; (3) investigating and taking remedial action in cases of actual or potential misuse(s) of such information; (4) limiting access to facilities, systems, and data by both employees and third parties; (5) requiring passwords for access to systems containing such information, for the stated purpose of protecting Plaintiff's confidential information from outside third parties; (6) locking and securing facilities where such information is maintained and requiring all visitors to check in and wear an appropriate "visitor" badge; (7) requiring that employees, including Howerton, protect such information and prohibiting employees, including Howerton, from disclosing, misusing, or misappropriating such information; and (8) initiating legal action when necessary and appropriate to protect such information.

21.    Plaintiff also maintains a detailed and strict "Internet Usage and Electronic Communications Policy," which is set forth in its Employee Handbook. The Policy provides that "[a]ll information access through the Company's intranet and other internal systems … is for the Company internal use only" and "[a]ny unauthorized use, dissemination or copying of such content is prohibited." It further provides that the Company's Systems are owned and made available by the company for the sole purpose of conducting the Company's business." Pursuant to the Policy, "[v]iolations …, including breaches of confidentiality or security, may result in suspension of

Systems privileges, disciplinary action up to and including termination.  The Company also reserves the right to hold employees personally liable for any violations of this Policy."  An employee's access to Plaintiff's computer systems may be revoked at any time and "automatically terminates upon the end of [an employee's] employment" with Plaintiff.

### A.    Howerton's Employment With Plaintiff

22.    Howerton previously worked for Plaintiff as a Territory Manager from May 2009 through August 2011, at which time he resigned his position.  In or around May 2014, Howerton returned to Plaintiff's employment, accepting a position with Plaintiff as a Regional Sales Manager responsible for California, Arizona, and Nevada. In this role, Howerton directed and supervised the sales team and aided Plaintiff in developing strategies to maximize his sales area's growth and profitability.  He was also responsible for maintaining customer relationships and consulting with athletic trainers, strength and conditioning coaches, and school nurses to secure product orders for Plaintiff and increase product usage.  In that role, Howerton  had access to Plaintiff's customer and sales lead databases and, as a result, acquired an extensive knowledge of Plaintiff's customers generally, customer lists, customer preferences, customer pricings, customer strategies, and other confidential and proprietary information related to Plaintiff's actual and prospective customers.

23.    In conjunction with his employment, Howerton was provided with a copy of Plaintiff's Employee Handbook and was made aware of and acknowledged the policies and procedures contained therein and his responsibility to abide thereby, including his obligation to maintain the secrecy of Plaintiff's trade secrets and/or confidential and proprietary information both during and after his employment by, *inter alia*, protecting such information and refraining from disclosing it to any third parties, including Plaintiff's competitors, customers, or any other person, firm, corporation or other entity.

24.    The Employee Handbook notes that "[t]he success of the Company depends upon the proper use and management of certain proprietary or confidential information" and that "[i]nformation of this type should not be discussed outside the Company, except when necessary in the performance of the employee's duties."  It further provides that "Company employees should not disclose any Company matters outside of the organization" and that "[u]nauthorized release of Company information may result in disciplinary action up to and including termination."  The Employee Handbook also prohibits employees from including "any trade secret or other confidential proprietary information of the Company" in social media or other online postings; notes that visitors, vendors, and outside salespeople are required to sign a nondisclosure/confidentiality agreement; and provides that "passwords or user ID's assigned by the Company are designed to protect the Company's confidential information from outside third parties" and that "[a]ll internet users will be held accountable for causing any … breaches of confidentiality."

25.    In November 2017, Howerton also executed the UA Agreement with Plaintiff's parent corporation, Lanai, which provided to him a grant of Award Units pursuant to the Company's 2015 Equity Incentive Plan.  Pursuant to the terms of the UA Agreement, Howerton acknowledged that, in the course of his employment with Plaintiff, he had received and would receive in the future certain confidential and proprietary information and trade secrets, including confidential information "regarding identifiable, specific and discrete business opportunities being pursued by the Company and its Subsidiaries."  In executing the UA Agreement, Howerton agreed that he would not "prior to or after [his] Separate Date, whether directly or indirectly … take commercial or propriety advantage of or profit from any Confidential Information [as defined therein] or disclosure Confidential Information to any Person for any reason or purpose whatsoever," except to authorized employees of the Company or in the course of perfuming his obligations under the UA Agreement.

26.     Howerton's job duties and responsibilities with Plaintiff included, *inter alia*, developing, implementing and maintaining sales plans for the sales area; developing and managing marketing plans, sales strategies and tactics; developing and managing vendor and customer relations; promoting customer service and satisfaction; managing key accounts; recreating, training, and hiring field sales employees; developing and motivating sales area employee performance; communicating and reinforcing the Company's mission at the sales area level; and providing leadership to the sales area in accordance with established corporate policies and guidelines

27.     In order to maximize his ability to succeed in his position, Howerton was provided access to Plaintiff's trade secrets and/or confidential and proprietary information and was trained in Plaintiff's operations and sales and marketing techniques, and related pricing and outreach strategies, on the condition that, pursuant to the Employee Handbook and the UA Agreement, he maintain the confidentiality and/or secrecy of this material and use it for the sole and exclusive benefit of Plaintiff.

**B.     Howerton's Pre-Resignation Unlawful Conduct**

28.     Plaintiff is informed and believes and on that basis alleges that, in the month *prior to* Howerton resigning his employment with Plaintiff, Howerton began working with Collins, which, according to its website (https://www.collinssports.com/csmimage/aboutcollins.pdf), is a "distributor of sports medicine, athletic training and strength and condition products." Plaintiff is further informed and believes and on that basis alleges that Collins offers the same or similar products and services to the same customer subset as Plaintiff and targets the same customers as Plaintiff.

29.     Plaintiff is informed and believes and on that basis alleges that, in or around March 2018, Howerton accepted a position with Collins as a Regional Sales Manager servicing California, Arizona, and Nevada and began a calculated and concerted campaign prior to his resignation on April 22, 2018, in spite of the obligations in the Employee Handbook and UA Agreement, to (1) access, copy, and/or

otherwise obtain and retain significant amounts of proprietary, confidential and competitively-valuable financial and strategic information regarding Plaintiff's business operations including, without limitation, information about Plaintiff's current and prospective customers, including customer lists, pricing, and contact information; (2) delete documents stored on the laptop issued to him by Plaintiff (the "Work Laptop"); and (3) affirmatively divert customer requests received by Howerton on behalf of Plaintiff in his capacity as an employee of Plaintiff to Collins for the benefit of Howerton and Collins.

30.     Plaintiff is informed and believes and on that basis alleges that, on or about March 18, 2018, *a month prior to his resignation* from Plaintiff, Howerton used his Work Laptop to create a document that he titled "Future Collins Customers." In that document, Howerton listed approximately thirty-nine (39) current and/or prospective customers of Plaintiff, including, without limitation, customer contacts and contact information. Since Howerton's resignation on April 22, 2018, *at least* two of those customers are no longer doing business with Plaintiff and are now doing business with Collins.

31.     Plaintiff is informed and believes and on that basis alleges that, between April 16 and April 20, 2018, Howerton, in his role as a Regional Sales Manager for Plaintiff, received, at his Plaintiff-issued email address, at least seven (7) requests from existing customers of Plaintiff for pricing on prospective orders for products and services. Upon or soon after receipt, Howerton forwarded each request to his personal email address (atclat1998@gmail.com). Neither Plaintiff, nor any employee thereof, was ever informed that Howerton, in his role as a Regional Sales Manager for Plaintiff, received those requests on behalf of Plaintiff, and therefore, Plaintiff never had a chance to respond to those requests.

32.     Indeed, Plaintiff is informed and believes and based thereon alleges that after accepting employment with Collins but prior to his April 22, 2018 resignation, Plaintiff received no less than ten (10) such requests from existing and/or prospective

customers that were not forwarded or provided to Plaintiff.  Instead, Plaintiff is informed and believes and based thereon alleges that, on each occasion, and in spite of the obligations in the Employee Handbook and UA Agreement, Plaintiff forwarded those requests to his personal email to be fulfilled by Collins and/or forwarded those requests to his personal email and prepared price quotes on behalf of Collins using the Work Laptop, including, but not limited to:

      a.    A request for a quote on various supplies from an existing customer of Plaintiff, a high school near Lafayette, California, received by Howerton at his Plaintiff-issued email addressed on April 13, 2018 and forwarded to his personal email address that same day, in response to which Howerton prepared or caused to be prepared a quote on behalf of Collins on April 17, 2018 – before giving notice of his resigning from Plaintiff's employment;

      b.    A request for a quote on various supplies from an existing customer of Plaintiff, a high school in the Los Angeles area, received by Howerton at his Plaintiff-issued email addressed on April 17, 2018 and forwarded to his personal email address that same day, in response to which Howerton prepared or caused to be prepared a quote on behalf of Collins on April 17, 2018 – before giving notice of his resigning from Plaintiff's employment;

      c.    A request for a quote on various supplies from an existing customer of Plaintiff, a high school in the Orange County area, received by Howerton at his Plaintiff-issued email addressed on April 16, 2018 and forwarded to his personal email address on April 17, 2018, in response to which Howerton prepared or caused to be prepared a quote on behalf of Collins on April 17, 2018 – before giving notice of his resigning from Plaintiff's employment; and

      d.    A request for two quotes on various supplies from an existing customer of Plaintiff, a high school near Palo Alto, California, received by Howerton at his Plaintiff-issued email addressed on April 19, 2018 and forwarded to his personal email address that same day, in response to which

Howerton prepared or caused to be prepared a quote on behalf of Collins on April 27, 2018 – after giving notice of his resigning from Plaintiff's employment, but *still* using his Work Laptop before it was returned to Plaintiff following his resignation.

33.     Plaintiff is informed and believes, and based thereon alleges, that after accepting employment with Collins but prior to his April 22, 2018 resignation, and in spite of the obligations in the Employee Handbook and UA Agreement, Plaintiff had no less than six quotes created by Plaintiff's Sales Support Coordinators and/or other employees of Plaintiff and, using the Work Laptop, duplicated those price quotes for Collins, including, but not limited to, the following occurrences:

a.     On or about April 10, 2018, at approximately 10:33 a.m. PST, Howerton received a detailed price quote for an existing customer (a private school located in the Los Angeles area) from Plaintiff's Sales Support Coordinator.  Plaintiff is informed and believes, and on that basis alleges, that the price quote was prepared by Plaintiff's Sales Support Coordinator at Howerton's request.  However, rather than providing that quote to Plaintiff's customer on behalf of Plaintiff, Howerton forwarded it to his personal email account (atclat1998@gmail.com) at approximately 10:45 a.m. PST.  That same day, at approximately 11:43 a.m. PST, Howerton used the Work Laptop to generate a price quote for that school on behalf of Collins.  Howerton's quote *on behalf of Collins* matched the prices quoted by Plaintiff's Sales Support Coordinator down to the cent or otherwise quoted a lower price for the very same items listed in the quote prepared by Plaintiff's Sales Support Coordinator.

b.     On or about March 13, 2018, at approximately 7:01 a.m. PST, Howerton received a detailed price quote for a prospective customer (a high school located just outside Los Angeles) from Plaintiff's Sales Support Coordinator.  Plaintiff is informed and believes, and on that basis alleges, that the price quote was prepared by Plaintiff's Sales Support Coordinator at

14

**COMPLAINT**

Howerton's request.  However, rather than providing that quote to Plaintiff's customer on behalf of Plaintiff, that same day, at approximately 12:21 p.m. PST, Howerton used the Work Laptop to generate a price quote for that school on behalf of Collins.  Howerton's quote *on behalf of Collins* matched the prices quoted by Plaintiff's Sales Support Coordinator down to the cent or otherwise quoted a lower price for the very same items listed in the quote prepared by Plaintiff's Sales Support Coordinator.  That same day, at approximately 3:15 p.m. PST, Howerton forwarded Plaintiff's price quote to his personal email account (atclat1998@gmail.com).

34.    Through searches conducted of Howerton's Work Laptop, returned to Plaintiff  following Howerton's resignation, Plaintiff is informed and believes, and based thereon alleges that, in the two to three weeks immediately preceding Howerton's midnight resignation on April 22, 2018, he deleted or attempted to delete multiple files from the Work Laptop to cover his tracks.

## C.    Howerton's Midnight Resignation From Plaintiff

35.    On Sunday, April 22, 2018, at 12:58 a.m. PST, Howerton resigned his employment with Plaintiff (the "Resignation Email"):

> **From:** "Howerton, Scott" <Scott.Howerton@medcosupply.com>
> **Date:** April 22, 2018 at 2:58:29 AM CDT
> **To:** "Chaffin, Dave" <Dave.Chaffin@medcosupply.com>
> **Cc:** "Finke, Mike" <Mike.Finke@medcosupply.com>
> **Subject: Resignation**
>
> Dave and Mike,
> Due to a recent job opportunity I am giving you my resignation effective immediately from Medco.
>
> Thank you.
>
> Scott Howerton MS, ATC-R
> Sales Representative
> Medco Sports Medicine
> 800.55.MEDCO | customersupport@medcosupply.com

**COMPLAINT**

medco-athletics.com
Mobile: 214.548.2386
Fax: 866-658-9093

36.    Four minutes after sending his Resignation Email under the cover of darkness and with full knowledge that Plaintiff would not be immediately aware of it, Howerton sent the following email, using the email address issued to him by Plaintiff, to expressly and purposefully solicit, induce, and/or entice actual and potential customers of Plaintiff to instead purchase products through Collins (the "Valued Customers Email"):

**From:** "Howerton, Scott" <Scott.Howerton@medcosupply.com>
**Date:** April 22, 2018 at 4:02:04 AM EDT
**To:** "atclat1998@gmail.com" <atclat1998@gmail.com>
**Subject: Scott Howerton from Medco to Collins Sports Medicine**

To all of my valued customers.

I have made a difficult decision but one that I feel is best for myself and my family.  On Monday I am changing sports medicine distributors from Medco to Collins Sports Medicine.  I have reached out to some of you via phone already, however if I did not I apologize however there was just not enough time.  I truly enjoy being a part of the sports medicine and certified athletic training community and I look forward to continue to service you with world class service like I have always tried to do.

Here is my new contact information.

Cell
951-595-6222

Scott.howerton@collinssports.com

Should you need a Collins catalog please do not hesitate to contact me and I can get one mailed out to you.  Also if you need a quote please email me and I will get one to you asap.  Also don't worry if you don't have Collins item numbers, you can send me Medco's item numbers and I can figure it or just give me good descriptions of the product you would like and we can go from there.

16

**COMPLAINT**

Again, I look forward to continue to work with everyone and provide everyone with world class service.

Thank you.

Scott Howerton MS, ATC-R
Sales Representative
Medco Sports Medicine
800.55.MEDCO | customersupport@medcosupply.com
medco-athletics.com
Mobile: 214.548.2386
Fax: 866-658-9093

37.    The Valued Customers Email appeared to have been sent to Howerton's personal email address (atclat1998@gmail.com) only.  However, based on its forensic examination of Plaintiff's systems and the Work Laptop, Plaintiff is informed and believes and based thereon alleges that the Valued Customer Email blind copied (*i.e.*, bcc'd) a contact list that included ***658 email addresses and 20 cell phone numbers*** (*i.e.*, text to email) for Plaintiff's current and prospective customers.

38.    As it would have done earlier had Howerton not concealed his having accepted competing employment with Collins, as soon as Plaintiff was made aware of Howerton's resignation, Plaintiff took immediate steps to terminate Howerton's use of and access to Plaintiff's computer systems, data, and network, which use and access was terminated at 8:37 a.m. PST on April 22, 2018.  Similarly, the cell phone issued to Howerton by Plaintiff was forwarded to Plaintiff beginning at 9:30 a.m. PST on April 22, 2018.  Howerton did not returned the Work Laptop and his company-issued cellphone to Plaintiff until approximately 12 days later, on or about May 3, 2018.

39.    Plaintiff is informed and believes and on that basis alleges that, following his resignation, Howerton formally joined Collins as an employee thereof, with the express intent to use Plaintiff's trade secrets and/or confidential and proprietary information to compete with it unfairly and to induce long-standing customers of Plaintiff to cease doing business with Plaintiff and instead purchase their products and

other services with Collins.  Moreover, Plaintiff is informed and alleges that Howerton had and has been engaging in this unlawful conduct with the knowledge, ratification and participation of Collins, including, but not limited to, its President, Wally Collins.

40.    Plaintiff is informed and believes and based thereon alleges that Plaintiff, acting on behalf of Collins, has engaged and continues to engage in a coordinated and targeted campaign to contact Plaintiff's customer accounts on which Howerton and/or employees that he supervised during his time employed with Plaintiff for the purposes of offering them services from Collins.

41.    Plaintiff is informed and believes and on that basis alleges that Howerton has used Plaintiff's trade secrets/confidential and proprietary information including, but not limited to, its customer data and pricing information, to undercut Plaintiff's product pricing and solicit, induce, and/or entice actual and potential Plaintiff's customers to instead purchase products through Collins.  For example, Plaintiff is informed and believes and based thereon alleges that on or about April 23, 2018 and on or about May 8, 2018, Plaintiff solicited orders from two existing customers of Plaintiff, utilizing and referencing Plaintiff's trade secrets/confidential and proprietary information about those customers.  Plaintiff is further informed and believes and based thereon alleges that this conduct was and is done with the knowledge, ratification and approval of Collins, including, but not limited to, its President, Wally Collins.

42.    Howerton, acting on his own and through the other Defendants, including Collins and the Doe defendants, engaged in the above-described unlawful acts knowingly, willfully and intentionally, and with the specific intent to deceive and cause harm to Howerton.  Howerton asserts that the above-alleged contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.  Howerton further alleges that, as a result of Defendants' misappropriation and unlawful use of such trade secrets/confidential and proprietary information, Howerton has already lost several existing customers to Collins, and has incurred and will incur actual losses in an amount to be proven at trial of over $75,000.00, exclusive

of interest and costs.

# FIRST CLAIM FOR RELIEF

## (Misappropriation Of Trade Secrets – Cal. Civ. Code § 3426, *et seq.*)

### [Against All Defendants]

43.     Plaintiff realleges each and every allegation set forth in the foregoing paragraphs and incorporates them herein by reference, and asserts that the factual contentions set forth in this claim for relief will likely have evidentiary support after a reasonable opportunity for further investigation and discovery.

44.     Plaintiff's trade secret materials are comprised of information that is not generally known to the public or to other persons who can obtain economic value from its disclosure or use.  These materials are the subject of reasonable efforts by Plaintiff to maintain their secrecy, and they derive independent economic value from not being generally known to the public or to others who can obtain economic value from their disclosure or use.  Therefore, these materials constitute "trade secrets" under Cal. Civ. Code § 3426.1.

45.     Plaintiff contends that Defendants acquired Plaintiff's trade secrets by improperly copying, accessing and/or removing them from Plaintiff's premises and/or systems, and/or by improperly using, transferring, and/or disclosing them in breach of a duty to maintain the secrecy and confidentiality thereof.

46.     By reason of the above-alleged acts, Plaintiff has suffered and will continue to suffer irreparable harm in an amount that is difficult or impossible to ascertain, thereby leaving Plaintiff without an adequate remedy at law.  Plaintiff is entitled to an injunction temporarily, preliminarily, and permanently restraining Defendants, their employers, agents, employees, and all persons acting in concert with them, from using, copying, publishing, disclosing, transferring, or selling Plaintiff's trade secrets, or any product or services based on or incorporating all or part of such trade secrets, and restraining them from obtaining any commercial advantage or unjust enrichment from the misappropriation of such trade secrets.

47.     Plaintiff is further entitled to an order requiring Defendants, their employers, agents, employees, and all persons acting in concert with them, to return to Plaintiff any and all of their trade secrets and confidential, proprietary materials, including but not limited to any and all materials incorporating or referencing Plaintiff's trade secrets and confidential and/or proprietary information.

48.     Plaintiff is further entitled to recover from Defendants for the actual damages sustained by Plaintiff as a result of Defendants' wrongful acts described in this Complaint.  The amount of such damages cannot be determined precisely at this time. Plaintiff contends that Defendants' acts of misappropriation were both willful and malicious, thereby entitling Plaintiff to an award of exemplary or punitive damages and attorneys' fees against Defendants.  Plaintiff is further entitled to recover from Defendants the gains, profits, advantages, and unjust enrichment that they have obtained as a result of their wrongful acts as described herein, in an amount to be proven at the time of trial.

## SECOND CLAIM FOR RELIEF

### (Misappropriation Of Trade Secrets – 18 U.S.C. § 1836, *et seq.*)

### [Against All Defendants]

49.     Plaintiff realleges each and every allegation set forth in the foregoing paragraphs and incorporates them herein by reference, and asserts that the factual contentions set forth in this claim for relief will likely have evidentiary support after a reasonable opportunity for further investigation and discovery.

50.     Plaintiff's trade secret materials are comprised of information that is not generally known to the public or to other persons who can obtain economic value from its disclosure or use.  These materials are the subject of reasonable efforts by Plaintiff to maintain their secrecy, and they derive independent economic value from not being generally known to the public or to others who can obtain economic value from their disclosure or use.  Therefore, these materials constitute "trade secrets" under 18 U.S.C. § 1839.

51.    Plaintiff's trade secret materials are used in and/or intended for use in foreign or interstate commerce and specifically in Plaintiff's provision of strength and conditioning, rehab and recovery, and pain relief products and services throughout the United States, including to thousands of elementary, middle and high schools and universities in California, Nevada, and Arizona.

52.    Plaintiff contends that Defendants acquired Plaintiff's trade secrets by improperly copying, accessing, and/or removing them from Plaintiff's premises and/or systems, and/or by improperly using, transferring, and/or disclosing them in breach of a duty to maintain the secrecy and confidentiality thereof.

53.    By reason of the above-alleged acts, Plaintiff has suffered and will continue to suffer irreparable harm in an amount that is difficult or impossible to ascertain, thereby leaving Plaintiff without an adequate remedy at law.   Plaintiff is entitled to an injunction temporarily, preliminarily, and permanently restraining Defendants, their employers, agents, employees, and all persons acting in concert with them, from using, copying, publishing, disclosing, transferring, or selling Plaintiff's trade secrets, or any product or services based on or incorporating all or part of such trade secrets, and restraining them from obtaining any commercial advantage or unjust enrichment from the misappropriation of such trade secrets.

54.    Plaintiff is further entitled to an order requiring Defendants, their employers, agents, employees, and all persons acting in concert with them, to return to Plaintiff any and all of their trade secrets and confidential, proprietary materials, including but not limited to any and all materials incorporating or referencing Plaintiff's trade secrets and confidential or proprietary information.

55.    Plaintiff is further entitled to recover from Defendants for the actual damages sustained by Plaintiff as a result of Defendants' wrongful acts described in this complaint.  The amount of such damages cannot be determined precisely at this time. Plaintiff contends that Defendants' acts of misappropriation were both willful and malicious, thereby entitling Plaintiff to an award of exemplary or punitive damages and

1   attorneys' fees against Defendants.  Plaintiff is further entitled to recover from

2   Defendants the gains, profits, advantages, and unjust enrichment that they have

3   obtained as a result of their wrongful acts as described herein, in an amount to be

4   proven at the time of trial.

5                          **THIRD CLAIM FOR RELIEF**

6   **(Violation of Computer Fraud and Abuse Act – 18 U.S.C. § 1030, *et seq.*)**

7                       **[Against All Defendants]**

8         56.    Plaintiff realleges each and every allegation set forth in the foregoing

9   paragraphs and incorporates them herein by reference, and asserts that the factual

10  contentions set forth in this claim for relief will likely have evidentiary support after a

11  reasonable opportunity for further investigation and discovery.

12        57.    Howerton, on behalf of himself and the other Defendants, knowingly,

13  willingly and with an intent to defraud Plaintiff concealed from Plaintiff that he had

14  accepted a position with Collins and was working with and/or for Collins while still

15  employed with Plaintiff to divert actual and prospective customer accounts to Collins

16  (and did, in fact, divert such accounts to Collins during that time), and resigned his

17  employment with Plaintiff in the middle of the night over a weekend in order to

18  maintain access to Plaintiff's computer network and systems and data (including its

19  trade secrets and/or confidential and proprietary information stored therein), which

20  access Howerton knew would have been immediately terminated by Plaintiff had it

21  been aware of Howerton's acceptance of employment with one of its competitors and

22  above-described intent, and thereby accessed without authorization and/or exceeded his

23  authorized access to Plaintiff's computer network and systems and data, and (a) deleted,

24  altered, or otherwise destroyed data maintained on Plaintiff's computer network and

25  systems, and (b) obtained valuable trade secrets and/or confidential and proprietary

26  information from Plaintiff's computer network and systems, which he is now using for

27  the benefit of himself and a competitor of Plaintiff.

28

58.     As a direct, proximate and foreseeable result of Howerton's unlawful actions on behalf of himself and the other Defendants, Plaintiff has suffered and continues to suffer substantial losses and damages in an amount to be proven at the time of trial, including, without limitation, the cost of responding to Howerton's conduct, conducting a damage assessment, and restoring and/or attempting to restore data to its condition prior to Howerton's offense, and revenue lost, in excess of $5,000.00 during any one (1) year period.

59.     Plaintiff is informed and believes, and on that basis alleges, that Howerton's wrongful actions on behalf of himself and the other Defendants were taken maliciously, oppressively, with a wanton disregard of Plaintiff's rights, and with the intent to injure Plaintiff and its business.  Plaintiff is therefore entitled to an award of punitive damages against Howerton and the other Defendants in an amount to be proven at the time of trial.

60.     Plaintiff has been damaged by Howerton's actions on behalf of himself and the other Defendants and, therefore, seeks compensatory and other equitable relief under 18 U.S.C. §1030(g) in an amount and forms to be proven at trial.  Additionally, as a result of Howerton's and the other Defendants' unlawful acts, Plaintiff has been forced to hire attorneys in order to protect its interests and is therefore entitled to an award of attorneys' fees from Defendants.

**FOURTH CLAIM FOR RELIEF**

**(Violation of Cal. Penal Code § 502, *et seq.*)**

**[Against All Defendants]**

61.     Plaintiff realleges each and every allegation set forth in the foregoing paragraphs and incorporates them herein by reference, and asserts that the factual contentions set forth in this claim for relief will likely have evidentiary support after a reasonable opportunity for further investigation and discovery.

62.     Howerton, on behalf of himself and the other Defendants, knowingly and without permission (a) accessed and used Plaintiff's data, computer, computer system,

and/or computer network with the intention to wrongfully control or obtain Plaintiff's data in violation of Cal. Penal Code § 502(c)(1), and (b) accessed and without permission took, copied and/or made use of data from Plaintiff's computers, computer systems and/or computer network in violation of Cal. Penal Code § 502(c)(2).

63.    As a direct, proximate and foreseeable result of Howerton's unlawful actions, on behalf of himself and the other Defendants, Plaintiff has suffered and continues to suffer substantial losses and damages in an amount to be proven at the time of trial, including, but not limited to, expenses reasonably and necessarily incurred by Plaintiff to verify that its computer system, computer network, and/or data was or was not altered, damaged, or deleted by Howerton's unauthorized access as described in this Complaint.

64.    Plaintiff is informed and believes, and on that basis alleges, that Howerton's wrongful actions were taken, on behalf of himself and the other Defendants, maliciously, oppressively, with a wanton disregard of Plaintiff's rights, and with the intent to injure Plaintiff and its business.  Plaintiff is therefore entitled to an award of punitive damages against Howerton in an amount to be proven at the time of trial.

65.    As a result of Howerton's unlawful acts, on behalf of himself and the other Defendants, Plaintiff has been forced to hire attorneys in order to protect its interests and is therefore entitled to an award of attorneys' fees from Defendants.

## FIFTH CLAIM FOR RELIEF

### (Tortious Interference With Prospective Economic Advantage)

### [Against All Defendants]

66.    Plaintiff realleges each and every allegation set forth in the foregoing paragraphs and incorporates them herein by reference, and asserts that the factual contentions set forth in this claim for relief will likely have evidentiary support after a reasonable opportunity for further investigation and discovery.

67.     Plaintiff has developed substantial business relationships with customers including, but not limited to, its schools, athletic trainers, physical therapists, and directors of sports medicine.  These relationships, individually and collectively, are highly valuable business assets to Plaintiff, and Plaintiff had a reasonable expectation that such relationships would continue.  Defendants were aware of these business relationships and the continuing nature thereof.

68.     Defendants worked in an unlawful and wrongful matter to divert and/or are actively attempting to divert said relationships from Plaintiff.  Defendants' unlawful acts include, without limitation, breach of contract, breach of the implied covenant of good faith and fair dealing, misappropriation of trade secrets, intentional interference, and/or unfair competition.  To the extent that Defendants did not use Plaintiff's trade secrets to accomplish their unlawful acts and interference, Plaintiff is informed and believes, and on that basis alleges, that they used Plaintiff's confidential and/or proprietary information to do so.

69.     By engaging in the conduct described above, Defendants intended to disrupt and/or interfere and are continuing to disrupt and/or interfere with Plaintiff's contractual and/or advantageous business relationships with its customers.  Further, Defendants actually disrupted and/or interfered with Plaintiff's contractual and/or advantageous business relationships with its customers.  Plaintiff is informed and believes that Howerton, acting as an agent of Collins has, in fact, diverted multiple of Plaintiff's customers to Collins, both before and after his midnight resignation, each of which were existing customers of Plaintiff.

70.     Defendants' conduct has harmed and is continuing to harm Plaintiff's relationships with its customers thereby proximately causing Plaintiff to sustain damages for which Plaintiff is entitled to a monetary recovery in an amount to be proven at the time of trial in an amount over $75,000.00, exclusive of interest and costs.

71.     Defendants' wrongful acts and conduct were willful, oppressive, fraudulent, and malicious and were done in conscious disregard for Plaintiff's rights

and with the intent to damage Plaintiff and its business operations. Plaintiff is therefore entitled to an award of punitive and exemplary damages against Defendants, and each of them.

## SIXTH CLAIM FOR RELIEF

### (Breach of Contract)

### [Against Defendant Howerton and DOES 1 through 50]

72.    Plaintiff realleges each and every allegation set forth in the foregoing paragraphs and incorporates them herein by reference, and asserts that the factual contentions set forth in this claim for relief will likely have evidentiary support after a reasonable opportunity for further investigation and discovery.

73.    On or about November 5, 2017, Howerton executed the UA Agreement with Plaintiff's parent company, Lanai, and as a subsidiary of Lanai, Plaintiff is an intended beneficiary of that agreement. Plaintiff contends that Howerton breached the UA Agreement, and specifically the Confidentiality provision therein, *inter alia*, by accessing and/or copying Plaintiff's trade secrets and/or confidential and proprietary information while an employee of Plaintiff with the express intent to use such information prior to and following the resignation of his employment to induce long-standing customers of Plaintiff to cease doing business with Plaintiff and instead purchase their products and supplies from Collins, Howerton's current employer, and that Howerton did in fact use such trade secrets and/or confidential and proprietary information for this purpose, both prior to and following his employment with Plaintiff. To the extent that Howerton did not use Plaintiff's trade secrets to accomplish his unlawful breaches, Plaintiff is informed and believes, and on that basis alleges, that he used Plaintiff's confidential and/or proprietary information to do so

74.    As a direct and proximate result of said breaches, Plaintiff has been damaged in a sum according to proof at the time of trial.

## SEVENTH CLAIM FOR RELIEF

### (Breach of Implied Covenant Of Good Faith And Fair Dealing)

### [Against Defendant Howerton and DOES 1 through 50]

75.    Plaintiff realleges each and every allegation set forth in the foregoing paragraphs and incorporates them herein by reference, and asserts that the factual contentions set forth in this claim for relief will likely have evidentiary support after a reasonable opportunity for further investigation and discovery.

76.    The UA Agreement executed by Howerton on or about November 5, 2017, contained an implied covenant of good faith and fair dealing, requiring that he refrain from engaging in conduct designed to harm or compete unlawfully with Plaintiff.

77.    Plaintiff contends that Howerton breached this implied covenant by, *inter alia*: (1) accessing, copying and/or otherwise retaining Plaintiff's trade secrets and/or confidential and proprietary information such as Plaintiff's databases, pricing lists, sales and pricing strategies, and other customer information; (2) working with and/or for Collins during his employment with Plaintiff to actively divert Plaintiff's actual and prospective customers to Collins; (3) joining Collins with the express intent to use Plaintiff's trade secrets and/or confidential and proprietary information to compete with it unfairly; and/or (4) misusing Plaintiff's trade secrets and/or confidential and proprietary information including, but not limited to, its customer data and pricing information, to knowingly, willfully and intentionally solicit and induce long-standing Plaintiff's customers to cease doing business with Plaintiff and instead do business with Collins.

78.    By virtue of these acts, Howerton has breached the UA Agreement's implied covenant of good faith and fair dealing, thereby proximately causing Plaintiff to sustain damages in an amount to be proven at the time of trial.

# EIGHTH CLAIM FOR RELIEF

## (Unfair Competition – Cal. Bus. & Prof. Code § 17200, *et seq.*)

### [Against All Defendants]

79.   Plaintiff realleges each and every allegation set forth in the foregoing paragraphs and incorporates them herein by reference, and asserts that the factual contentions set forth in this claim for relief will likely have evidentiary support after a reasonable opportunity for further investigation and discovery.

80.   Defendants' acts as alleged herein, including, *inter alia*, misappropriating and using Plaintiff's confidential, proprietary, and/or trade secret information in violation of California and United States law; violating the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, violating Cal. Penal Code § 502, *et seq.*; intentionally interfering with Plaintiff's prospective economic advantage; and breaching Howerton's contracts and implied covenants of good faith and fair dealing with Plaintiff, constitute acts of unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq.*

81.   Plaintiff has no adequate or speedy remedy at law for these acts because they have caused, and will continue to cause, irreparable injury to Plaintiff.  To the extent that Defendants did not use Plaintiff's trade secrets to accomplish their acts of unfair competition, Plaintiff is informed and believes, and on that basis alleges, that Defendants used Plaintiff's confidential and/or proprietary information to do so.

82.   By reason of the above-alleged acts, Plaintiff has suffered irreparable harm in an amount that is difficult or impossible to ascertain, thereby leaving it without an adequate remedy at law.  Plaintiff is entitled to an injunction restraining Defendants, their employers, agents, employees, and all persons acting in concert with them, from engaging in further acts of unfair competition, and restraining them from obtaining any commercial advantage or unjust enrichment as a result of their unlawful conduct.

83.   Defendants' conduct has also proximately caused Plaintiff to sustain losses of money and property, thereby entitling it to restitution from Defendants, or each of

1    them.

2    <u>**NINTH CLAIM FOR RELIEF**</u>

3    **(Unfair Business Practices – Mass. Gen. Laws ch. 93A, § 11)**

4    **[Against Defendant Collins and DOES 1 through 50]**

5    84.    Plaintiff realleges each and every allegation set forth in the foregoing

6  paragraphs and incorporates them herein by reference, and asserts that the factual

7  contentions set forth in this claim for relief will likely have evidentiary support after a

8  reasonable opportunity for further investigation and discovery.

9    85.    Plaintiff is engaged in the conduct of trade and/or commerce as alleged

10  herein, including, *inter alia*, providing strength and conditioning, rehab and recovery,

11  and pain relief products and services throughout the United States, including to

12  thousands of elementary, middle and high schools and universities in California,

13  Nevada, and Arizona.  Collins is also engaged in the business of selling sports

14  medicine, athletic, and strength and conditioning products to athletic trainers, physical

15  therapists, and healthcare professionals and competes directly with Plaintiff in this

16  commercial space in a fashion cognizable under Chapter 93A, § 11.

17    86.    Plaintiff and Collins are distinct business entities.  Collins has never had

18  an employment relationship with Plaintiff.

19    87.    Collins' conduct as alleged herein, including, *inter alia*, misappropriating

20  and using Plaintiff's confidential, proprietary, and/or trade secret information in

21  violation of California and United States law; violating the Computer Fraud and Abuse

22  Act, 18 U.S.C. § 1030, *et seq.*, violating Cal. Penal Code § 502, *et seq.*; and

23  intentionally interfering with Plaintiff's prospective economic advantage, constitute

24  unfair or deceptive business act and/or practices within the meaning of Chapter 93A, §

25  11.  To the extent that Collins did not use Plaintiff's trade secrets to accomplish its acts

26  of unfair competition, Plaintiff is informed and believes, and on that basis alleges, that

27  Collins used Plaintiff's confidential and/or proprietary information to do so.

28

88.    By reason of the above-alleged acts, Plaintiff has suffered irreparable harm in an amount that is difficult or impossible to ascertain, thereby leaving it without an adequate remedy at law.  Plaintiff is entitled to an injunction restraining Collins, its employers, agents, employees, and all persons acting in concert with it, from engaging in further acts of unfair competition, and restraining it from obtaining any commercial advantage or unjust enrichment as a result of its unlawful conduct

89.    Plaintiff is further entitled to recover from Collins the actual damages sustained by Plaintiff as a result of Collins' wrongful acts as described in this Complaint in an amount and forms to be proven at trial, together with such equitable relief as the Court deems to be necessary and proper.  Plaintiff contends that Collin's unfair and/or deceptive business acts or practices were both willful and knowing, thereby entitling Plaintiff to an award of up to three, but not less than two, times the amount of actual damages sustained by Plaintiff.

90.    Additionally, as a result of Collins' unlawful acts, Plaintiff has been forced to hire attorneys in order to protect its interests and is therefore entitled to an award of attorneys' fees and costs incurred in this action from Collins.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1.    A permanent injunction restraining and enjoining Defendants from continuing the wrongful acts and conduct set forth above;

2.    During the pendency of this action, such temporary and/or preliminary equitable or other relief as hereafter requested by Plaintiff;

3.    Restitution;

4.    Compensatory damages to the fullest extent permitted under applicable law, including without limitation for unjust enrichment and/or compulsory royalties and/or as otherwise provided in *Cal. Civ. Code* § 3426, *et seq.*, in an amount to be proven at trial;

5.    Punitive and/or exemplary damages, including without limitation as provided in *Cal. Civ. Code* § 3426, *et seq.*;

6. Not less than double and/or up to treble damages, including without limitation as provided in *Mass. Gen. Laws ch. 93A, § 11*;

7. Reasonable attorneys' fees as permitted by applicable law, including without limitation as provided in *Cal. Civ. Code* § 3426, *et seq.* and/or *Cal. Civ. Proc. Code* § 1021.5 and/or *Mass. Gen. Laws ch. 93A, § 11*;

8. All costs of suit herein incurred, including without limitation as provided in *Cal. Civ. Code* § 3426, *et seq.* and/or *Mass. Gen. Laws ch. 93A, § 11*; and

9. Such other and further relief as the court may deem proper.

Date: May 17, 2018                              **McGuireWoods LLP**


By:    /s/ Matthew C. Kane
Matthew C. Kane, Esq.
Sabrina A. Beldner, Esq.
Sylvia J. Kim, Esq.
Amy E. Beverlin, Esq.

Attorneys for Plaintiff
PERFORMANCE HEALTH SUPPLY, INC. d/b/a MEDCO SPORTS MEDICINE

1

## **JURY TRIAL DEMANDED**

2        Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a

3  jury trial on all issues triable by jury.

4

5  Date: May 17, 2018                  **MCGUIREWOODS LLP**

6

7                            By:     /s/ Matthew C. Kane

8                                    Matthew C. Kane, Esq.
                                    Sabrina A. Beldner, Esq.

9                                    Sylvia J. Kim, Esq.
                                    Amy E. Beverlin, Esq.

10

11                                  Attorneys for Plaintiff
                                  PERFORMANCE HEALTH, INC. d/b/a
                                  MEDCO SPORTS MEDICINE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**